UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Darnell L. Lewis

   v.                               Case No. 16-cv-188-LM

Warden, Federal Correctional
Institution, Berlin, New
Hampshire

**REPORT AND RECOMMENDATION**

Darnell Lewis is an inmate in the Federal Correctional Institution in Berlin, New Hampshire. Pursuant to 28 U.S.C. § 2241, he petitions for a writ of habeas corpus, claiming that the federal Bureau of Prisons ("BOP") improperly calculated the term of his incarceration. Specifically, he contends that the BOP erred by failing to give him credit against his federal sentence for time he claims to have spent in federal custody between April 14, 2009, and January 1, 2010. Before this magistrate judge for a report and recommendation is respondent's motion for summary judgment. Petitioner objects. For the reasons that follow, respondent's motion should be denied.

### I.   Summary Judgment Standard

A movant is entitled to summary judgment where he "shows that there is no genuine dispute as to any material fact and

[that he] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing the record, the court construes all facts and reasonable inferences in the light most favorable to the nonmovant. Kelley v. Corr. Med. Servs., Inc., 707 F.3d 108, 115 (1st Cir. 2013).

## II. Background

The summary judgment record in this case is limited to the declaration of Grace Woods-Coleman, a BOP management analyst. Lewis's petition is unverified, and even though the court provided him with notice of the federal and local rules that pertain to summary judgment, he has submitted no material of evidentiary quality in support of his objection to respondent's motion. Accordingly, the facts in this section are drawn exclusively from the Woods-Coleman declaration. See Sweat v. Grondolsky, 898 F. Supp. 2d 347, 348 n.1 (D. Mass. Oct. 15, 2012) (drawing facts used to decide summary judgment motion in § 2241 case largely from declaration of BOP management analyst).

On April 14, 2009, Lewis was arrested by officers of the Kalamazoo, Michigan, Police Department. At the time, he was on parole from a sentence for a prior state conviction. His "arrest led to parole violation charges for [his] prior state

conviction." Resp't's Mot. Summ. J., Ex. A, Woods-Coleman Decl. (doc. no. 10-1) ¶ 5. The record, however, is silent as to when Lewis was charged with violating his parole, and does not describe the manner in which the parole violation was prosecuted.

"On April 16, 2009, [the] state charges against the Petitioner [related to his April 14 arrest] were dismissed and he was released from state custody to the United States Marshals Service (USMS)." Woods-Coleman Decl. ¶ 6. Lewis was released to the USMS because the conduct for which he had been arrested on April 14 "also formed the basis of . . . federal charges [against him]." Id. ¶ 5. However, Woods-Coleman describes Lewis's release as having been "in error, because he still had a state Parole Violation term." Id. ¶ 6. In support of that proposition, Woods-Coleman cites three attachments to her deposition, but respondent has not produced them.[1] As a result, those attachments are not part of the summary judgment record. Moreover, the Woods-Coleman declaration does not describe the

---

[1] Those attachment are described as: (1) "Facsimile from the Office of the Prosecuting Attorney, County of Kalamazoo," Woods-Coleman Decl. ¶ 13.a; (2) "United States Marshals Service Form US-129, Individual Custody/Detention Report," id. ¶ 13.b; and (3) "E-mail correspondence between DSCC and Michigan Dept. of Corrections," id. ¶ 13.c. The declaration does not provide dates for any of those three documents.

3

legal mechanics of Lewis's "release" from state custody to federal custody, nor does it report anything that state officials might have said to the USMS about the reason(s) for Lewis's release.

On November 19, 2009, Lewis was sentenced on his federal charges. "On December 29, 2009, Petitioner was returned to state custody with the federal judgment lodged as a detainer." Woods-Coleman Decl. ¶ 8. The summary judgment record includes no description of the mechanics of Lewis's return to state custody. "On May 11, 2010, Petitioner [was] paroled from his Michigan state sentence into the custody of the USMS for service of his federal sentence." Id. ¶ 9. At that time, the BOP performed a sentence calculation using May 11 as the starting date for Lewis's federal incarceration. On that basis, the time between Lewis's arrest on April 14, 2009, and his return to state custody on December 29 was not credited toward his federal sentence, notwithstanding the fact that he was in the custody of the USMS for most of that time.

### III. Discussion

"[W]hen an inmate wants to challenge or clarify the amount of credit for time served, the inmate must seek an

4

administrative remedy before the Bureau of Prisons, and the administrative determination [is] subject to review through a section 2241 petition."  Stebbins v. United States, Nos. 1:10-cr-00077 JAW & 1:14-cv-00368-JAW, 2015 WL 5022023, at *4 (D. Me. Aug. 24, 2015) (citing United States v. Stebbins, 523 F. App'x 1, 4 (1st Cir. 2013)).  It is undisputed that Lewis has exhausted the administrative remedies available to him through the BOP.

In his petition, Lewis seeks credit toward his federal sentence for the time he was in custody between April 14, 2009, and January 1, 2010.  In his view, he is entitled to that relief because: (1) he was in federal custody during that time, which means that the BOP erred when it determined that his federal custody began on May 11, 2010; or (2) the BOP should have given him credit for the time he served between April 14, 2009, and January 1, 2010, under the provisions of 18 U.S.C. § 3621(b).  Respondent disagrees, categorically.

In Sweat, Magistrate Judge Dein explained that "[t]here are two separate determinations to be made in computing a federal sentence."  898 F. Supp. 2d at 351 (quoting Jimenez v. Warden, FDIC, Fort Devens, Mass., 147 F. Supp. 2d 24, 27 (D. Mass. 2001)).  She went on to specify that "[t]he BOP must decide (1)

when the sentence commences and (2) to what extent the defendant in question may receive credit for any time already spent in custody." Id. (citation omitted). Judge Dein continued:

> Pursuant to 18 U.S.C. § 3585(a), a federal sentence "commences on the date the defendant is received in custody . . . to commence service [of sentence] at, the official detention facility at which the sentence is to be served." Thus, "[a] federal sentence is deemed to have commenced on the date a defendant is received into federal custody[.]" Ysabel v. Sabol, 645 F. Supp. 2d 37, 39 (D. Mass. 2009). "When a federal court imposes a sentence on a defendant who is already in state custody, the federal sentence may commence if and when the Attorney General or the Bureau agrees to designate the state facility for the service of the federal sentence." United States v. Smith, 812 F. Supp. 368, 370 (E.D.N.Y. 1993), and cases cited. See also Ysabel, 645 F. Supp. 2d at 39 (time served in state custody "may be credited nunc pro tunc (i.e., may be deemed to have run concurrently against [the defendant's] federal sentence) if the BOP chooses to designate the state institution for service of that federal sentence.").

Id.

The petitioner in Sweat was convicted on several federal charges while he was serving a state sentence. See 898 F. Supp. 2d at 349. He appeared in federal court after having been "'borrowed' by the federal government on various occasions pursuant to a federal habeas writ to answer [his] federal charges." Id. Under those circumstances, the court adjudicating Sweat's § 2241 petition ruled that because he was in state custody when he was sentenced on his federal

6

convictions, the BOP acted correctly when it "calculated Sweat's service of his federal sentence as commencing on his parole from New York State custody," id. at 351. In this case, if Lewis had been borrowed by the federal government to stand trial then, perhaps, the reasoning of Sweat would entitle respondent to summary judgment. But the summary judgment record includes no evidence that Lewis was borrowed from state custody to stand trial in the same way that the defendant in Sweat was. Thus, the facts of Sweat are materially distinguishable from the facts of this case, as the record now stands.

Rather, as currently developed, this case has somewhat more in common with Stephens v. Sabol, 539 F. Supp. 2d 489 (D. Mass. 2008). In Stephens, while the petitioner was in state custody awaiting trial on state charges, he was indicted in federal court and "was brought into federal custody under a writ of habeas corpus ad prosequendum." Id. at 491. He was tried on his federal charges, convicted, and sentenced. See id. Thereafter, he was returned to state custody and was sentenced on his state charges. See id. Then, the petitioner successfully moved to vacate his state sentence, and a date for resentencing was set. See id. This is what happened next:

> Apparently unaware that Stephens was to be
> resentenced, officials at the Dade County Jail

> informed the United States Marshals that he had
> finished serving his state sentence and that the
> Marshals should execute the federal detainer lodged
> pursuant to his federal judgment and commitment order.
> Consequently, Stephens was picked up by U.S. Marshals
> on September 20, 2001, and placed in the Federal
> Corrections Institute at Jesup, Georgia ("FCI-Jesup"),
> on March 15, 2002. About two months later, federal
> officials at FCI-Jesup realized that Stephens had not
> completed his state sentence. They returned him to
> the Florida Department of Corrections on May 23, 2002.
>
> On November 26, 2002, Stephens filed another
> motion to modify his state sentence. The motion was
> granted, and Stephens was resentenced on January 22,
> 2003, nunc pro tunc February 14, 2002. . . .
>
> Stephens completed his state sentence on February
> 28, 2003 [and] was immediately transferred to federal
> custody.

Id. at 491-92 (footnotes and citations to the record omitted).

The BOP, in turn, determined that Stephens began to serve his federal sentence on February 28, 2003.

Stephens filed a § 2241 petition, advancing three arguments that he began serving his federal sentence at some point before his February 28, 2003, transfer to federal custody. The court found merit in one of those arguments, "Stephens's . . . contention . . . that his federal sentence began when he was mistakenly transferred to federal custody in 2001." Stephens, 539 F. Supp. 2d at 495. Judge Gertner explained:

> That day [i.e., the day of the mistaken transfer], the
> U.S. Marshals took Stephens into federal custody with
> the intention of transporting him to FCI-Jesup to

8

> begin serving his federal sentence. When they did so,
> the federal government took primary jurisdiction over
> him. As noted above, the sovereign with primary
> jurisdiction continues to have jurisdiction until some
> affirmative act relinquishes it. In this case, the
> "expiration" of the petitioner's state sentence and
> the affirmative act of transferring him to federal
> authorities suffice. See [United States v.] Cole, 416
> F.3d [894,] 897 [(8th Cir. 2005)]; Jimenez v. Warden,
> FDIC, Fort Devens, 147 F. Supp. 2d 24, 28 (D. Mass.
> 2001). When Stephens was remitted to the Marshals,
> Florida no longer claimed any hold on him; to the
> contrary, it disavowed having one. And Florida
> permitted the United States to take physical custody
> of Stephens without the use of a writ, which would
> have maintained its primary jurisdiction. It thus
> voluntarily, if mistakenly, allowed the United States
> to take primary jurisdiction over Stephens. See
> Weekes v. Fleming, 301 F.3d 1175, 1180-81 (10th Cir.
> 2002). See also Fed. Bureau Prisons, Sentence
> Computation Manual at 1-12, Program Statement 5880.28
> (July 19, 1999) (defining exclusive federal custody as
> custody obtained without the use of a restrictive
> writ).

Id. (citation to the record omitted). Finally, Judge Gertner noted that "[i]t makes no difference that Florida's relinquishment of jurisdiction was accidental." Id. She explained her conclusion:

> In this area, courts have consistently held executives
> to a negligence standard. See, e.g., Vega v. United
> States, 493 F.3d 310, 319 (3d Cir. 2007); United
> States v. Martinez, 837 F.2d 861, 865 (9th Cir. 1988).
> Florida's act of relinquishing jurisdiction when
> Stephens had not yet been resentenced was clearly
> negligent, and the Court will hold it to the plain
> import of its actions.

Id. at 495-96.

As respondent correctly points out, the determinative legal principle in this case is primary jurisdiction, which operates in the following way:

> The sovereign that first arrests a defendant takes primary jurisdiction over him. See, e.g., United States v. Cole, 416 F.3d 894, 897 (8th Cir. 2005). It retains that jurisdiction until it takes a specific act to relinquish it, such as release on bail, parole, or the dismissal of pending charges. See id. In addition, the sovereign may, in an act of executive discretion, waive the right to primary jurisdiction and turn the defendant over to another sovereign. See, e.g., Poland v. Stewart, 117 F.3d 1094, 1097-98 (9th Cir. 1997) (citing Ponzi v. Fessenden, 258 U.S. 254 (1922)).

Stephens, 539 F. Supp. 2d at 493 (parallel citation omitted).

Here, petitioner argues that the United States gained primary jurisdiction over him on April 16, 2009, when it became the first sovereign to arrest him. That is incorrect; before that date, Lewis had been arrested twice by the State of Michigan. He was first arrested for the offense that resulted in the state sentence from which he had been paroled, and he was arrested again on April 14. For his part, respondent argues that the State of Michigan had primary jurisdiction over Lewis continuously until May 11, 2010, when he was paroled from his state sentence into the custody of the USMS.

But, it is undisputed that on April 16, 2009, the State of Michigan "released" Lewis to the USMS. Respondent attempts to

10

evade the consequences of Lewis's release by characterizing it as a mistake. However, even if Lewis's release was erroneous, it was an "affirmative act," Stephens, 539 F. Supp. 2d at 495, that, without more, would be sufficient to relinquish jurisdiction, see id. If Michigan relinquished jurisdiction over Lewis on April 16, that would support his claim. But, if Michigan transferred physical custody of Lewis to the USMS without relinquishing jurisdiction, that would support respondent's position. Such a transfer could have taken place if, for example, Michigan had given up custody of Lewis pursuant to a writ of habeas corpus ad prosequendum. See id. at 493 ("When the writ is used, the defendant officially remains in the jurisdiction of the sovereign from which he was borrowed, even though his custodians change.").

The problem here is that while respondent argues that Lewis's release to the USMS on April 16, 2009, was a change of custody without a change of jurisdiction, the summary judgment record does not support that argument. In her declaration, Woods-Coleman characterizes Lewis's "release[ ] from state custody to the United States Marshals Service" as having been "in error." Doc. no. 10-1 ¶ 6. But she does not describe the mechanics of that release, and respondent has not produced any

of the documents that Woods-Coleman attached to her declaration. For that reason, in its current state, the record does not permit the court to determine whether Lewis's April 16, 2009, release was a relinquishment of both custody and jurisdiction or was merely a relinquishment of custody, with jurisdiction remaining vested in the State of Michigan. Thus, the summary judgment record does not demonstrate that respondent is entitled to judgment as a matter of law that the United States did not acquire jurisdiction over Lewis until May 11, 2010. Accordingly respondent's motion for summary judgment should be denied.[2]

## IV. Conclusion

For the reasons detailed above, respondent's motion for summary judgment, document no. 10, should be denied, but without prejudice to respondent's filing another summary judgment motion.

Any objection to this report and recommendation must be filed within 14 days of receipt of this notice. See Fed. R.

---

[2] Both parties engage, at least to some extent, on the question of whether the BOP erred by failing to give Lewis the benefit of retroactive designation of his place of imprisonment, pursuant to 18 U.S.C. § 3621, but absent a definitive determination of the sovereign that had jurisdiction over Lewis during the relevant time period, there is no basis for even attempting to decide the question of retroactive designation.

Civ. P. 72(b)(2). Failure to file an objection within the specified time waives the right to appeal the district court's order. See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

/s/ Andrea K. Johnstone
Andrea K. Johnstone
United States Magistrate Judge

April 27, 2017

cc: Darnell L. Lewis, pro se
    Seth R. Aframe, Esq.