UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Darnell L. Lewis

   v.                                   Case No. 16-cv-188-LM

Warden, Federal Correctional
Institution, Berlin, New
Hampshire

**REPORT AND RECOMMENDATION**

Darnell Lewis, who appears pro se, petitioned this court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, while he was an inmate at the Federal Correctional Institution in Berlin, New Hampshire ("FCI-Berlin"). In his petition, Lewis claims that the federal Bureau of Prisons ("BOP") has improperly calculated the term of his incarceration. Specifically, he contends that the BOP erred by failing to give him credit against his federal sentence for time he spent in the custody of the United States Marshals Service ("USMS") between April 14, 2009, and January 1, 2010. Before this magistrate judge for a report and recommendation is respondent's second motion for summary judgment. Petitioner objects. For the reasons that follow, respondent's motion should be denied.

**Summary Judgment Standard**

"Summary judgment is appropriate only when the record, read in the light most favorable to the nonmovant, presents no

genuine issue as to any material fact and reflects the movant's entitlement to judgment as a matter of law." Morse v. Cloutier, 869 F.3d 16, 22 (1st Cir. 2017) (citing Fed. R. Civ. P. 56(a); Schiffmann v. United States, 811 F.3d 519, 512 (1st Cir. 2016)).

**Background**

On April 14, 2009, Lewis was arrested in Michigan on drug charges by officers of the Kalamazoo Police Department on drug charges. At the time, he was on parole from a sentence for a prior state conviction. Two days after Lewis was arrested, on April 16, 2009, an assistant county prosecutor sent a fax to the county jail, directing the jail to release Lewis "to the custody of the U.S. Marshall's Office . . . as the [state] charges against [him] . . . will be dismissed to due to [his] Federal indictment[]." Resp't's Mot. Summ. J., Ex. A., Attach. A (Doc. No. 18-1), at 2. "There was no writ of habeas corpus prosequendum issued by the federal court ordering Michigan to produce Lewis to answer the federal charge." Resp't's Mot. Summ. J. (Doc. No. 14), at 1. On the same day that the assistant prosecutor sent the fax quoted above, Lewis was: (1) released by the county jail to the USMS; and (2) arrested by the federal Drug Enforcement Agency ("DEA").

An Individual Custody/Detention Report ("ICDR") prepared by the USMS shows that Lewis was in the custody of the USMS from

April 16 to December 29, 2009.  See Resp't's Mot. Summ. J., Ex. A, Attach. B (Doc. No. 18-2), at 3.  "On December 29, 2009, [Lewis] was returned to state custody with the federal judgment lodged as a detainer."  Id., Ex. A, Woods-Coleman Decl. (Doc. No. 18) at ¶ 8.  "On May 11, 2010, [Lewis] paroled from his Michigan state sentence into the custody of the USMS for service of his federal sentence."  Id. at ¶ 9.  At some point, the BOP performed a sentence calculation using May 11, 2010, as the starting date for Lewis's federal incarceration.  Thus, the time between Lewis's arrest by the DEA on April 16, 2009, and his return to state custody on December 29 was not credited toward his federal sentence.

The summary judgment record includes an April 26, 2011, email exchange between a BOP inmate classification and computation technician and a specialist in the Central Records Section at the MDOC.  In the first e-mail, the BOP technician made the following request for information:

> This inmate paroled from MDOC on 04/03/2007.  He violated his parole on 4/14/2009.  Was he given credit from 04/14/2009-05/11/2010 when he [was] discharged from his MDOC parole violation or was there a break in his credit during that time.  He believes he is entitled to credit from us [i.e., BOP] for some of that time.  Please verify his MDOC credit.

Resp't's Mot. Summ. J., Ex. A, Attach. C (Doc. No. 14-1), at 2. The MDOC records specialist responded:

> There has been no break in service on his Michigan

3

>sentence. He has received credit since July 17, 1998 and continues to be credited with service toward his maximum term while in your custody.

Id. The content of that e-mail was confirmed two days later, in a letter from another MDOC employee. See id., Attach. H (Doc. No. 18-8), at 2.

In September 2015, Lewis asked the BOP for credit against his federal sentence for the time he spent in the custody of the USMS between April 14, 2009, and January 1, 2010.[1] His request generated this response:

>On 04-14-09 you were arrested by state PD and taken to jail for Delivery of Controlled Substance. The DEA interviewed you inside the jail the same day. You were released to USM[S] custody on 04-16-2009. On 04-14-2009 your parole violation was entered into the data system and you were sent back to continue your state prison term until you paroled on 5-11-2010, which is the same day your computation began with the Bureau of Prisons. You were primary state custody until the date of parole.

Pet. (Doc. No. 1) at 9.

Dissatisfied with that response, Lewis began the process of seeking an administrative remedy from the BOP. In his initial inmate request, he stated, in pertinent part:

>This petitioner asserts that he was initially arrested by the federal authorities and was then taken to the local jail for processing and holding purposes. This movant is relying on Barden v. [K]eohane, [according] to which the BOP has the discretion to retroactively designate a state prison as the place of a prisoners confinement to serve a federal sentence under 18

---

[1]Lewis's actual request does not appear to be included in the summary judgment record.

>U.S.C. § 3621(b).

Pet. at 10. The BOP responded as follows:

>A review was conducted and found that on April 14, 2009, you were arrested by Michigan State Police and taken to Kalamazoo County Jail, for the Delivery of Control Substance. The same day you were questioned by the Drug Enforcement Administration. On April 14, 2009, your Parole Violation was entered into Michigan Department of Corrections data system. On April 16, 2009, you were released, inadvertently, to United States Marshal Service. The Kalamazoo County Jail had no information pertaining to your Parole Violation that had been entered on April 14, 2009. You were considered primarily state custody and you were sent back to the state to complete your probation violation until you were paroled on May 11, 2015 [sic]. The credit for the time you are requesting has been credited towards your Michigan parole violation and is precluded under Title 18 U.S.C[.] 3585(b).

Pet. at 26.[2]

Lewis appealed, and his appeal was granted to the extent that the BOP agreed to consider whether to make a "nunc pro tunc" designation of the MDOC as a facility in which Lewis was serving his federal prison sentence between April 14, 2009 and January 1, 2010. To collect the information necessary to determine whether to make a nunc pro tunc designation, Jose Santana of the BOP's Designation and Sentence Computation Center wrote to Western District of Michigan Judge Robert Jonker, the

---

[2] 18 U.S.C. § 3585(b) provides that "[a] defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . . as a result of the offense for which the sentence was imposed . . . that has not been credited against another sentence."

sentencing judge in Lewis's federal criminal case, to ask whether he had intended for Lewis's federal sentence to run consecutively to or concurrently with his state sentence. In the letter, Santana explained:

> On November 19, 2009, Darnell Lewis, was sentenced by the Court to a 121-month term of imprisonment for Possession with Intent to Distribute 50 Grams of More of Cocaine Base. At the time the federal sentence was imposed, Mr. Lewis was under the primary jurisdiction of state authorities in Michigan. . . . Following sentencing, Mr. Lewis was appropriately returned to state authorities and the U.S. District Court Judgment was filed as a detainer.

On January 14, 2010, the State of Michigan revoked Mr. Lewis' parole and he was ordered to serve the remainder of the previously imposed 22-year term of imprisonment.

> . . . .
>
> Mr. Lewis has requested that his federal sentence be served concurrently with the state term, which would be accomplished by the Bureau of Prisons designating the state institution for service of his federal sentence.

Resp't's Mot. Summ. J., Ex. A, Attach. I (Doc. No. 18-9), at 2.

Judge Jonker responded:

[Y]ou ask whether the Court has any position on whether the BOP should retroactively designate a state institution where Defendant served time on a state conviction as a location for concurrent service of the federal sentence Defendant is now serving. I have reviewed the public record of the federal sentencing and find that the Court did not express any intention on this issue [i.e., concurrent service of Lewis's state and federal sentences] at the time of sentencing. Under these circumstances, I doubt whether the Court has any power now to affect the designation decision of the BOP. In any event, I believe the BOP should calculate the time of Defendant's federal sentence in this case, including any potential impact of the state custodial time, under the rules and policies the BOP

6

normally applies.

Id., Attach. J. (Doc. No. 18-10), at 2.

Based in part on Judge Jonker's response, Lewis's final appeal was denied as follows:

> A review of your record reveals [that] on April 14, 2009, you were arrested by law enforcement officials from the Kalamazoo Department of Public Safety in Kalamazoo, Michigan, on local drug charges. At the time of your arrest, you were on parole with the Michigan Department of Corrections . . . and a parole violation warrant was issued.
>
> On April 16, 2009, you were temporarily removed from state custody by federal agents from the Drug Enforcement Administration, and charged with Possession with Intent to Distribute 50 Grams of More of Cocaine Base. The local charges for drug possession were not pursued by Kalamazoo County in lieu of federal prosecution; however, you were still in the primary custody of the state of Michigan, pending your parole violation case.
>
> Records reflect that on November 19, 2009, you were sentenced in the United States District Court, Western District of Michigan, to a 121-month term of imprisonment for Possession with Intent to Distribute 50 Grams or More of Cocaine Base. On December 29, 2009, you were returned to state custody to complete your Michigan state sentence for violating your parole.

Pet. at 15.

This action followed. In his petition, Lewis claims that he is entitled to credit against his federal sentence for the time he spent in USMS custody between April 14, 2009, and January 1, 2010, for two reasons: (1) from April 14 onward, he was under the primary jurisdiction of the United States; and (2)

7

pursuant to 18 U.S.C. § 3621(b), the BOP should have designated the facilities in which he was held between April 14, 2009, and January 1, 2010, as places where he served his federal sentence.

## Discussion

Respondent moves for summary judgment, arguing that: (1) the State of Michigan obtained primary jurisdiction over Lewis on April 14, 2009, and did not relinquish that jurisdiction when it released Lewis to the USMS on April 16; and (2) even if the State of Michigan did relinquish primary jurisdiction, Lewis is only entitled to 40 days of credit toward his federal sentence, based upon the time he served from November 19 to December 29, 2009, because he could not have started serving his federal sentence any earlier than the date on which it was imposed, i.e., November 19.

### I.   Primary Jurisdiction

Under the primary-jurisdiction doctrine, "[t]he first sovereign to take physical custody of a defendant retains 'primary jurisdiction' until releasing that jurisdiction." Elwell v. Fisher, 716 F.3d 477, 481 (8th Cir. 2013) (citation omitted).  "Generally, a sovereign can only relinquish primary jurisdiction in one of four ways: 1) release on bail, 2) dismissal of charges, 3) parole, or 4) expiration of sentence."

Id.  Finally, "[a] defendant sentenced by both a state and federal sovereign will first serve the sentence of the sovereign with primary jurisdiction."  Thomas v. Warden, Fed. Corr. Inst., No. 13-cv-259-LM, 2015 U.S. Dist. LEXIS 13868, at *10, 2015 WL 502144, at *4 (D.N.H. Feb. 5, 2015) (citing United States v. Warren, 610 F.2d 680, 684 (9th Cir. 1980)), appeal filed sub nom., Thomas v. Schult, No. 15-1186 (1st Cir. filed Feb. 18, 2015).

In respondent's view, the State of Michigan obtained primary jurisdiction over Lewis when he was arrested by local police on April 14, 2009, and never gave up primary jurisdiction over him, despite the fact that state officials erroneously released Lewis to the USMS without requiring the presentation of a writ of habeas corpus prosequendum, a device that allows a sovereign to give up physical custody of a person without relinquishing primary jurisdiction.[3]  Petitioner, on the other

---

[3] With regard to the mechanics of the writ:

> The writ of habeas corpus ad prosequendum is issued by a requesting jurisdiction seeking to have a prisoner in another jurisdiction produced to the requesting jurisdiction to stand trial.  United States v. Lewis, 732 F.3d 6, 15 (1st Cir. 2013).  The requesting jurisdiction does not take the prisoner into custody, because he is already in custody; rather, it is directed to the individual's custodian.  Id.  The custodian does not relinquish primary jurisdiction over the prisoner — instead, he is, in effect, "borrowed" by the requesting jurisdiction.  Smart v. Warden, No. 13-cv-375-SM, [2014 U.S. Dist. LEXIS

hand, claims that the United States had primary jurisdiction over him ever since April 14, 2009.

The State of Michigan had primary jurisdiction over Lewis when he was arrested for the offense that resulted in the state sentence from which he had paroled on April 3, 2007, and with regard to which he remained on parole at the time of his April 14, 2009 arrest. Despite the statement of the MDOC that Lewis was continuously serving his Michigan sentence during the period relevant to this action, under federal law, Michigan relinquished its primary jurisdiction by paroling Lewis in April of 2007. See Elwell, 716 F.3d at 481 (identifying parole as an event that results in the relinquishment of primary jurisdiction). Michigan again obtained primary jurisdiction on April 14, 2009, when Lewis was arrested on new state drug charges. However, Michigan explicitly relinquished primary jurisdiction when it dismissed those charges in conjunction with releasing him to the custody of the USMS on April 16, 2009. See id. (identifying dismissal of charges as an event that results in the relinquishment of primary jurisdiction). Upon Lewis's

---

88730, at *7,] 2014 WL 2940871, at *3 (D.N.H. June 30, 2014).

Murphy v. Cent. Falls Det. Facility Corp., No. C.A. 14-203 S, 2014 U.S. Dist. LEXIS 183690, at *4 n.4, 2015 WL 1969178, at *4 n.4 (D.R.I. Dec. 16, 2014), R&R adopted, 2015 U.S. Dist. LEXIS 56723, at *6, 2015 WL 1969178, at *2 (D.R.I. Apr. 30, 2015).

release from state custody, he was arrested by the federal DEA, which established the primary jurisdiction of the United States. Accordingly, when Lewis was sentenced in federal court, in November of 2009, he was under the primary jurisdiction of the United States.

To be sure, the record includes multiple representations to the contrary. Specifically, BOP officials have characterized Lewis's custody as of April 16, 2009 as follows: (1) "BER/Supv Corr Systems Spec" told Lewis that he was in "primary state custody until the date of parole [i.e., May 11, 2010]," Pet. at 9; (2) Warden Tatum told Lewis that as of April 14, 2009, he was "considered primarily state custody," id. at 26; (3) Jose Santana told Judge Jonker that when Lewis was sentenced for his federal crime, he "was under the primary jurisdiction of state authorities in Michigan," Resp't's Mot. Summ. J., Ex. A, Attach. I, at 2; and (4) the BOP's Administrator of National Inmate Appeals, Ian Connors, told Lewis that as of April 14, he was "still in the primary custody of the state of Michigan, pending [his] parole violation case," Pet. at 15. But all of those statements either: (1) ignore the effect of Lewis's April 2007 parole, which terminated the State of Michigan's primary jurisdiction over him; or (2) assume that the presumed April 14, 2009 filing of a parole violation, in and of itself, established the State of Michigan's primary jurisdiction.

11

Respondent has produced evidence that various BOP officials believed that on April 14, 2009, Lewis's "parole violation was entered into the [MDOC] data system," Pet. at 9, 26, or that "a parole violation warrant was issued," id. at 15. But respondent has produced no evidence that, at any point before Lewis was arrested by the DEA on April 16, any state or local law-enforcement officer ever: (1) took Lewis into custody on the parole violation as a result of the entry into the MDOC data system; or (2) arrested him pursuant to a parole violation warrant on him. In other words, while the record shows that Lewis was arrested by local law-enforcement officers on a drug charge, and that various state or local officials determined that the conduct underlying that charge also constituted a violation of the terms of Lewis's parole, respondent has produced no evidence that Lewis was ever taken into custody by state law-enforcement officers for violating his parole. To the contrary, the Michigan prosecutor explicitly released him from state custody to federal custody on April 16, 2009. That matters because primary jurisdiction is not established by a criminal defendant's conduct. A sovereign obtains primary jurisdiction by taking a defendant into physical custody. See Elwell, 716 F.3d at 481.

There is no evidence in the record before the court demonstrating that Lewis was taken into custody for a parole

violation before he was released to the USMS and arrested by the DEA. The State of Michigan could have taken Lewis into custody for a parole violation before April 16, 2009, but primary jurisdiction is established when a sovereign takes a person into physical custody, see id., not when a defendant engages in conduct that would permit a sovereign to take him into custody.[4]

Instead, respondent has produced evidence that does show that: (1) the jail that released Lewis to the USMS on April 16 did not know about the notice of a parole violation that had been entered into Lewis's MDOC record two days earlier; (2) Lewis was handed over to state officials on December 29, 2009, not to serve a sentence that had been imposed as a result of his parole violation, but to face charges that he had violated his parole; and (3) his parole was not actually revoked until January 14, 2010. Thus, there is no evidence to support the proposition that Lewis was in the custody of the State of Michigan for a parole violation at any time before he was released to the USMS and arrested by the DEA on April 16, 2009.

Respondent attempts to bolster the court of his position concerning primary jurisdiction by asserting that Michigan state authorities "inadvertently" transferred Lewis to the USMS

---

[4]Respondent has produced evidence that Lewis's parole was revoked, but according to the letter from Jose Santana to Judge Jonker, Lewis's parole was revoked on January 14, 2010, long after he had been released to the USMS.

13

without a writ of habeas corpus prosequendum, in error, and that the State's error did not cause the State to lose primary jurisdiction. He supports that argument by citing several cases in which erroneous releases by state officials did not result in the relinquishment of primary jurisdiction. The problem with respondent's argument is that it rests upon the faulty premise that, at the time of Lewis's release to the USMS, Michigan had primary custody of Lewis which, as discussed above, it did not. An erroneous failure to obtain primary jurisdiction is very different from an erroneous relinquishment of primary jurisdiction, which was the issue in the cases respondent cites in his brief.

For the reasons discussed herein, the undisputed factual record does not establish that respondent is entitled to judgment, as a matter of law, on the basis that the State of Michigan retained primary jurisdiction over Lewis at any time after April 16, 2009.

II.  April 16, 2009 through January 1, 2010

Respondent's fallback argument is that even if the United States obtained primary jurisdiction over Lewis on April 16, 2009, his federal sentence could not have started running any earlier than November 19, 2009, the date on which that sentence was imposed. Lewis claims that he should receive credit against

his federal sentence for all the time he served in the custody of the USMS from April 14, 2009, onward.

Citing Schleining v. Thomas, 642 F.3d 1242, 1247 (9th Cir. 2011), respondent argues that "[t]he earliest date on which a federal sentence can commence is the date on which the district court imposes the sentence," Resp't's Mot. Summ. J. (doc. no. 14) 3, and that "a federal sentence can never begin before the federal court imposes it," id. at 8. Schleining, however, is inapposite. In that case, "[t]he sole question for review [was] whether a federal prisoner may receive [Good Conduct Time] credit for time he served in state prison – discharging a state sentence – before he was sentenced in federal court." 642 F.3d at 1246-47 (emphasis in the original). Here, Lewis is not seeking credit for time he served in state prison; as discussed above, he is seeking credit for time he served in the custody of the USMS, while he was under the primary jurisdiction of the United States.

More importantly, respondent's assertion that a federal sentence can never begin before it is imposed is refuted by the applicable federal statute which provides that:

> [a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

18 U.S.C. § 3585(a). The statute then goes on to provide for

credit for prior custody. See § 3585(b). Section 3585(b)'s provision for credit for prior custody is broad enough that, under the proper circumstances, credit may be given for time served prior to the imposition of a sentence. See, e.g., McClain v. Bureau of Prisons, 9 F.3d 503, 505 (6th Cir. 1993) (per curiam) ("We hold that petitioner should be given credit on the federal sentence for the time that he was on state parole, from July 1, 1991, until the date of his sentence, October 11, 1991."). Thus, Lewis is not precluded, as a matter of law, from receiving credit against his federal sentence for time served in the custody of the USMS before he was sentenced.

In short, the summary judgment record establishes that Lewis was in primary state custody on April 14 and 15, 2009, before he was arrested by the DEA and taken into USMS custody. The summary judgment record, however, does not establish that Lewis is not entitled to credit against his federal sentence for the time he served in the custody of the USMS between April 16, 2009 and January 1, 2010.

Additionally, while the parties have addressed Lewis's asserted entitlement to sentence credit for the period between April 14, 2009 and December 29, 2009, they have not addressed whether, if the court denies summary judgment and finds that Lewis was in federal custody on and after April 16, 2009, whether he remained in federal custody after December 29, 2009.

Accordingly, respondent cannot be said to have met his burden to demonstrate that he is entitled to summary judgment as a matter of law to the extent Lewis seeks credit against his federal sentence for time he spent in custody between December 30, 2009 and January 1, 2010.

## Conclusion

For the foregoing reasons above, respondent's motion for summary judgment, (Doc. No. 14) should be granted in part, to the extent Lewis seeks credit against his federal sentence for time spent in state custody on April 14 and 15, 2009, and otherwise denied. Further, the district judge should grant the petition for a writ of habeas corpus, and direct the BOP to credit Lewis's sentence for the time spent in custody between April 16, 2009 and January 1, 2010, unless respondent can show cause why the petition should not be granted or Lewis not be credited as recommended, within fourteen days of the date of this Report and Recommendation.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Failure to file specific written objections to the Report and Recommendation within the specified time waives the right to appeal the district court's order. See Santos-Santos

v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016); Fed. R. Civ. P. 72(b)(2).

_____
Andrea K. Johnstone
United States Magistrate Judge

January 30, 2018

cc: Darnell L. Lewis, pro se
    Seth R. Aframe, Esq.